GEORGE W. HARRINGTON *vs.* TOWN OF PLAINVIEW and others.

October 6, 1880.

**Dismissal of Appeal.**—*James* v. *Cornish*, 25 Minn. 305, followed, that an appeal will not be dismissed where the judgment appealed from adjudges costs against the appellant, on the ground that the questions in controversy have, since the appeal, become mere abstract questions as between the parties.

**Injunction to restrain Issue of Town Bonds.**—Where a statute provides two modes, one valid and the other invalid, for authorizing the officers of a municipal corporation to issue bonds of the corporation, inasmuch as the bonds when issued need recite only that they were issued under the statute, without specifying in which of the two modes the officers were authorized to issue them, and as there might be *bona-fide* holders of bonds so issued, an action for injunction at the instance of a proper party will lie to restrain the issuance of the bonds by the municipal officers, under the invalid mode provided by the statute.

**Towns—Electors alone can take Action requiring Local Taxation.**—Under the constitution it is not competent for the legislature to authorize any person or class of persons, other than the electors or the officers chosen by the electors of a town, to determine what action requiring local taxation the town will take in any particular case. Therefore, Laws 1877, c. 106, § 7, which assumed to empower a majority of the resident taxpayers, without regard to whether they were electors or not, to bind a town to issue its bonds to aid in the construction of any railroad, was unconstitutional and void.

The plaintiff, a resident and tax-payer in the town of Plainview, in Wabasha county, brought this action in the district court for that county to restrain the town officers from issuing the bonds of the town to the Plainview Railroad Company, to aid in the construction of its railway. The action was

tried by *Mitchell*, J., and judgment was ordered ·and entered for the defendants, and the plaintiff appealed.

*Taylor & Sperry*, for appellant.

*Wilson & Gale*, for respondents.

It is certainly competent for the legislature to *authorize* the issuance of bonds by towns in aid of railways, and taxation for their payment.   *Davidson* v. *Com'rs of Ramsey County*, 18 Minn. 482.   And where the legislature may authorize, it may direct or order; for the town being the mere agent of the state, and having no power whatever itself in the premises, except to perform the functions for which it is created, its assent or dissent cannot affect the validity of the act which it.is delegated to do.   *Town of Duanesburgh* v. *Jenkins*, 57 N. Y. 177; *Town of Bennington* v. *Park*, 50 Vt. 178; *Guilder* v. *Town of Otsego*, 20 Minn. 74; *Guilder* v. *Town of Dayton*, 22 Minn. 366.   The last two cases relate to the power of the legislature to order the construction of ordinary highways, and that the towns within which they are or which are to be benefited by them should pay therefor; and the principle is the same in the case of railways, for they are merely improved public highways.   *Davidson* v. *Com'rs of Ramsey County*, 18 Minn. 482; *Thompson* v. *Lee County*, 3 Wall. 327; *Railroad Company* v. *Otoe County*, 16 Wall. 667; *Olcott* v. *Supervisors*, 16 Wall. 678.

But even if the approval of the town was a condition on which alone the legislature has the right to authorize or direct the issuance of the bonds, that approval has been given in this case.   How that consent shall be given—whether by vote of the electors, or by petition of a majority of the resident tax-payers—is clearly in the discretion of the legislature. *Town of Duanesburgh* v. *Jenkins*, 57 N. Y. 177 ; *Town of Bennington* v. *Park*, 50 Vt. 178 ; *First Nat. Bank* v. *Town of Concord*, 50 Vt. 257; *People* v. *Batchelder*, 53 N. Y. 128 ; *Horton* v. *Thompson*, 71 N. Y. 513; *People* v. *Mitchell*, 35 N. Y. 551; *Williams* v. *Town of Duanesburgh*, 66 N. Y. 129.

GILFILLAN, C. J.  .In this case the respondent moved to

dismiss the appeal on the ground that, since the entry of the judgment appealed from, the bonds to enjoin the issuance of which the action was brought have been issued, and that, therefore, the question whether the defendants ought to issue them is a mere abstract question. This would be so, were it not that the judgment is also for costs against the plaintiff. As held by this court in *James* v. *Cornish*, 25 Minn. 305, the appellant has the right to have the judgment examined to determine whether it was correct, so as to entitle defendants to costs. The motion to dismiss is therefore denied.

The point is also made that it is not a proper case for injunction, because, if the statute is unconstitutional and gives no authority to issue the bonds, their invalidity will appear on their face, and there will always be a legal defence to them in whosesoever hands they may come. If, by recital of the act under which they issue, their invalidity must appear on their face, so that there could be no *bona-fide* holder of them, an injunction will not lie to restrain their issuance. *Township of East Oakland* v. *Skinner*, 94 U. S. 255. But if the act be valid, a mere recital in the bond that it was issued under and pursuant to such act, without any further recital, is sufficient, so that a *bona-fide* holder will be protected, although there may have been a defect in the proceedings under the act to authorize the officers to issue the bonds. *Humboldt Township* v. *Long*, 92 U. S. 642. If the act in question here were wholly void, and no valid bonds could be issued under it, the case would fall within the former of these decisions. But the act provides two modes for authorizing the issue of bonds, one of which is conceded to be valid, and the other only is claimed to be invalid. We do not think the bond need recite under which of these provisions of the act it is issued. It is enough to refer to the act generally, and a purchaser would have the right to presume that it was issued under the valid provisions of the act. There might, therefore, be *bona-fide* purchasers of the bonds. It is a proper case for injunction.

Laws 1877, *c.* 106, provides:

"Section 1. Any county, town, incorporated city or incorporated village in this state, is hereby authorized and empowered, in the manner herein provided, to aid in the construction of any railroad in this state, to be constructed by any railroad company for public use, by authority of any law of the state, in the manner hereinafter provided, and which will promote the general prosperity and welfare of the tax-payers of such municipality; and the mutual agreement hereinafter referred to, when the same shall be arrived at, shall be conclusive evidence that such railroad will so promote the general prosperity and welfare of the tax-payers of such municipality.   *   *   *"   (Gen. St. 1878, *c.* 34, § 92.)

"Sec. 2. The aid to be contributed to the construction of any such railroad by any such county, town, city or village, shall be by the bonds of such municipality, to be issued to or for the use of such railroad company.   *   *   *"   (*Id.* § 93.)

"Sec. 3. No such bonds shall be issued to or for the use of any such railroad company, and no such stock shall be issued to any such municipality, until a mutual agreement in relation thereto shall have been arrived at in the mode hereinafter specified; and when such mutual agreement shall have been arrived at, (in either one of such modes,) the proper officers of such municipality shall be authorized and required to issue and deliver such bonds in conformity with the mode so agreed upon," etc.   (*Id.* § 94.)

Section 4 provides that a railroad company, seeking such aid, shall make and deliver to the county auditor, town clerk, or city or village clerk, its proposition in writing for the issuance to it of the municipal bonds.   (*Id.* § 95.)

Section 5 provides a mode for arriving at the "mutual agreement" mentioned in the preceding sections, which is by means of an election by the legal voters of the county, town, city or village, as the case may be, notice of which is to be given, in a mode prescribed, by the county auditor, or town,

city or village clerk, upon receiving the proposition, in which such voters vote for or against such proposition; and only in case a majority vote for it, is it to be deemed accepted.

Section 7 provides another mode of arriving at such "mutual agreement," as follows: "*First*. Within three months after the filing of any such proposition as is specified in the fourth section of this act, with any county auditor, town clerk, or clerk of any city or village, as the case may be, the said railroad company shall cause notice to be given, as prescribed in the fifth section of this act, in three public places in each election precinct in the district in which aid is desired, stating that after a day named in said notice, which shall be at least five days after its date, a petition to the proper authorities of said county, town, city or village will be presented to the resident tax-payers of such county, town, city or village for their signatures, asking such authorities to agree to such proposition; and such petition shall be appended to a substantial copy of such proposition. *Second*. If, within four months after the filing of such proposition with any such county auditor, town clerk, or clerk of any city or village, as the case may be, the said railroad company shall deliver to such clerk a substantial copy or copies of such proposition so filed, with such petition to the proper authorities of such county, town, city or village, asking such authorities to agree to such proposition, appended thereto, bearing the signatures of a majority of the persons residing in such county, town, city or village, who were assessed for taxes upon real or personal estate in such county, town, city or village, as the case may be, as shown by the last assessment roll of the district of which aid is desired, which signatures shall be verified by the affidavit of some person witnessing such signatures, then such mutual agreement for the issue of bonds by such municipality, and of stock by such railroad company, shall be deemed and considered to have been arrived at and perfected, and thereupon such bonds and

stock shall be issued and delivered in conformity with the true intent and meaning of such proposition, and with the provisions of this act." (Gen. St. 1878, c. 34, § 98.)

The Plainview Railroad Company proceeded, for the purpose of procuring the bonds of the town of Plainview, under section 7. Having filed its proposition with the town clerk, it caused notice to be given that a petition to the town authorities, asking them to agree to such proposition, would be presented for signature to the resident tax-payers of the town; and, within the time prescribed, filed with the town clerk a copy of the proposition, with the petition appended, bearing the signatures, properly verified, of a majority of the resident tax-payers of the town. To enjoin the issuance of the town bonds to the railroad company under these proceedings this action is brought. The court below dismissed the action on the merits.

The case necessarily involves the consideration of the validity of section 7 of the act cited. The proposition was made, and very largely discussed, both in the oral arguments and in the briefs, that it is competent for the legislature to impose on a municipal corporation—a city, county or town—the burden of constructing, or contributing to the expense of constructing, a railroad to be owned and operated for public uses by a private corporation. It is unnecessary to express any opinion on this. The legislature has not assumed to impose such burden on the town of Plainview. It has not determined that it ought to, nor enacted that it shall, issue these bonds, nor passed in any way on the necessity or expediency of the town issuing them, nor on the question that the public interests of the town will be to any extent subserved by the construction of this road. Nor does the act authorize either the electors of the town nor the town officers to determine that question. The petition, it is true, is addressed to the municipal authorities, but they have no power given them to accept or reject it. When the petition is signed by a majority of the resident tax-payers, the proper town offi-

cers are authorized and required to issue the bonds, and no discretion is left them in the matter.  What the section assumes to do is to empower the majority of a certain class of residents within the county, town, city or village, to determine, whether assented to or not by the electors or the proper officers, what action the municipal corporation ought to and shall take in aiding a railroad company to construct its road, whenever such company may seek such municipal aid; to govern, direct, and control the action of the municipal corporation in such cases; to determine that the local public interests require that a corporate debt shall be incurred, involving the necessity of local taxation to pay it.

It must be evident that if the legislature may vest the resident tax-payers with power to govern the corporate action in cases of this kind, it may in any and all other cases; may give to them the entire governing power over such corporations; and if it may vest the government in this class of persons, or in any other class than that indicated by the constitution, there is no limitation or control over the legislature in its selection of the class which shall govern.  It may give the power to tax-payers of a certain age; or to male tax-payers; or to payers of taxes on real estate; or to payers of taxes on personal property; or, indeed, to any other class of persons.  Conceding such power in the legislature, it is difficult to see why, instead of indicating the persons to govern municipal corporations by indicating the class to which they shall belong, it may not indicate them by name.  It is very different from the power of the legislature to entrust the performance of a ministerial act on behalf of the corporation to a particular officer, or to a person named specially for the purpose, or to distribute the functions of such corporations between the electors at large and the officers elected by them, or among the officers so elected.

The question really in the case, then, involves the power of the legislature to commit the government of towns, in whole or in part, to others than the electors of such towns or the

officers elected by them.    The provisions of the state constitution in reference to towns are very brief.    Article 11, § 3, reads: "Laws may be passed providing for the organization, for municipal and other town purposes, of any congressional or fractional townships in the several counties in the state: *provided*, that when a township is divided by county lines, or does not contain one hundred inhabitants, it may be attached to one or more adjoining townships or parts of townships for the purposes aforesaid."    Section 4: "Provision shall be made by law for the election of such county or township officers as may be necessary."    Section 5: "Any county and township organization shall have such powers of local taxation as may be prescribed by law."    Article 7, § 1: "Every male person of the age of twenty-one years or upwards, belonging to either of the following classes, who shall have resided in the United States one year, and in this state for four months next preceding any election, shall be entitled to vote at such election, in the election district of which he shall at the time have been for ten days a resident, for all officers that now are, or hereafter may be, elective by the people."    Then follows a specification of the classes of persons from whom the electors are taken.    Section 6: "All elections shall be by ballot, except for such town officers as may be directed by law to be otherwise chosen."    To give the legislature power to enable women to vote for officers of schools, or upon any measure relating to schools, an amendment to the constitution was adopted in 1875.    (Const. art. 7, § 8.)    Except in this particular the legislature cannot enlarge or restrict the elective franchise.

From these clauses in the constitution it is apparent that it was intended the legislature should provide for the organization of towns, with powers of local self-government, including the power of local taxation; that the officers of such organizations should be elected by ballot or otherwise, as the legislature may prescribe, but they should be elected by the electors whose qualifications are defined in the constitution; that

the powers entrusted to such organizations should be prescribed by the legislature, and might include such, in respect to local matters, as are in their nature legislative; and that the legislature should prescribe what officers they shall have, and their respective powers and duties.

Though the language of the constitution is permissive in form, it was undoubtedly intended to make it the duty of the legislature to provide for such organizations. The decentralizing of governmental power, and vesting it, when pertaining to merely local objects and purposes, in local organizations, so as to be exercised by those who alone are interested in and affected by its exercise, is what distinguishes American republican government from those republican governments which have been established elsewhere; and it is to be assumed that every American state constitution, unless it necessarily excludes such idea, intends to preserve this feature of American policy. So far as the constitution of this state is concerned, providing for local political corporations or *quasi* corporations, as cities, counties, towns, etc., is the only instance in which, or purpose for which, the legislature may delegate legislative power. It may delegate to each of such organizations the legislative power as to local matters deemed necessary to its well-being; but no one could claim that the power to legislate over any of these organizations could be delegated to any but the organization itself. Section 5, art. 11, says: "Any county and township organization shall have such powers of local taxation as may be prescribed by law." The legislature may prescribe how such delegated legislative power shall be exercised by the officers chosen by the electors, or by the body of the electors. These alone are recognized in the constitution as entitled to exercise political power. Mere residents or mere tax-payers, as such, are not regarded as qualified to exercise such power. For that purpose they must be electors, or officers provided by law chosen by the electors. The corporation acts as a body politic, directly or indirectly, through those in whom political power is vested

by the constitution; and the legislature cannot provide for any others expressing the will of the corporation.

In this our constitution, as we construe it, differs from those of New York and Vermont, as construed by the courts of those states, and in which states legislative acts, similar to that we are considering, have been sustained. Thus, in *Town of Duanesburgh* v. *Jenkins*, 57 N. Y. 177, the court lay down the rule: "How the consent of a town shall be given is clearly in the discretion of the legislature." "The measure of consent on the part of the town and its tax-payers or electors was fixable at the will of the legislature originally." And in *Town of Bennington* v. *Park*, 50 Vt. 178, the court said: "The legislature has the undoubted right to prescribe the mode of voting by towns, school-districts, and other municipal organizations, and has always exercised the right. It may rightfully provide that the action of the municipality shall be contingent upon a majority vote, a two-thirds vote, or the unanimous vote of the inhabitants; and it may require the majority vote to include male tax-payers or female tax-payers, and to include or exclude such persons as its wisdom may determine." Thus construing their constitutions, it followed, necessarily, that the legislature might provide for the tax-payers, whether electors or not, expressing the consent and determining the action of the town. But, under our constitution, the action of the town must be determined by the legislature itself, or by those whom the constitution indicates for such purpose, to wit, the electors, or the lawful officers elected by them and authorized so to act. It follows that it is not competent for the legislature to authorize any person or class of persons, other than the electors or the officers chosen by the electors, to determine for a town what action requiring local taxation it will take in a particular case, and that section 7 of the act under consideration is invalid, and any bonds issued pursuant to it void.

Judgment reversed, and cause remanded for judgment pursuant to this opinion.