TOWN OF PLAINVIEW *vs.* WINONA & ST. PETER RAILROAD COMPANY.

April 28, 1887.

**Town Bonds in Aid of Railway—Unconstitutional Statute—Estoppel.**
—An agreement entered into between a railway company and the authorities of a town, upon petition of a majority of the tax-payers, in pursuance of the provisions of Laws 1877, *c.* 106, § 7, for the issuance of the bonds of such town, is invalid, and imposes no legal obligation upon the town, by reason of the unconstitutionality of the statute; and the latter, in its corporate capacity, is not estopped to resist the enforcement of bonds so issued by the completion of a line of railroad under the agreement by such company; following *Harrington* v. *Town of Plainview*, 27 Minn. 224.

**Same—Issue to Railway Company—Transfer to Bona Fide Purchaser —Action by Town against Company.**—Where a railroad company procured negotiable bonds to be so issued by the officers of a town, under the section of the statute referred to, which were in form the obligations of the town, and recited on their face that they were issued under such an agreement, and which were accepted by such company, and negotiated and transferred by it for the full face value thereof, and were subsequently negotiated and sold to the citizens of another state, who, in an action in the circuit court of the United States, brought against the town to recover overdue interest, and tried upon the merits, recovered final judgment therefor, which fixed the liability of the town for the whole amount of such bonds to the holders thereof, *held*, that the acts of the company in procuring and negotiating the bonds were without authority of law and wrongful, and that, by reason thereof, a cause of action arose in favor of the town, and against the company, for the recovery of the amount of such bonds, with interest.

**Same—Liability of Successor to Original Company.**—Under Sp. Laws 1881, *c.* 414, upon the purchase by the Winona & St. Peter Railroad Company of the property and franchises of the Plainview Railroad Company, it succeeded to the liabilities of the latter company, including the claim involved in this suit.

Plaintiff brought this action in the district court for Wabasha county, against the defendant as successor to the liability of the Plainview Railroad Company, to recover the amount ($50,000) of coupon

bonds unlawfully issued in plaintiff's name by its officers to the Plainview Company, and by that company transferred to the Chicago & Northwestern Railway Company, and by the latter company to individual holders for value. Judgment was demanded for $50,000, with interest at 7 per cent. per annum (the rate provided in the bonds and coupons) from January 1, 1879, the date of the bonds.

By Sp. Laws 1881, *c.* 414, the defendant was authorized to purchase the property and franchises of the Plainview Company, provided that any such purchase should be made, and all the purchased property should be held, by defendant subject to all demands, claims, and rights of action against the Plainview Company arising out of the latter company's having theretofore obtained and disposed of certain bonds and coupons purporting to have been issued by the towns of Plainview, Elgin, and Viola to the Plainview Company; and that in taking a transfer under the act, the purchasing company should assume all claims and demands against the Plainview Company, to the extent and value only of the property and franchises so transferred. In this case it was stipulated that the property acquired by the defendant from the Plainview Company was equal to the amount claimed by plaintiff.

A jury was waived, and the action tried by *Collins*, J., (acting for the judge of the third district,) whose findings of fact were, in substance, as follows:

On January 31, 1878, the Plainview Company made and filed with plaintiff's town clerk a proposition in writing for the issuance of bonds to the amount of $50,000 in aid of its railway. Afterwards the company procured petitions to be signed, and on March 30th delivered them to the town clerk, and on that day the plaintiff's supervisors passed a resolution accepting the proposition of the company, agreeing to issue the bonds, and waiving the issue of stock to the town by the company. The proceedings were entirely in accordance with Laws 1877, *c.* 106, §§ 4 and 7, (Gen. St. 1878, *c.* 34, §§ 95, 98,) no election having been held, under section 5; and it was agreed by the parties that the Plainview Company, by construction of its road, had earned the bonds and become entitled to them, prior to their issuance, if section 7 was constitutional.

After these proceedings and before the bonds were made or issued, one George W. Harrington, a resident and tax-payer in the plaintiff town, brought suit in the district court for Wabasha county against the town and its officers and the Plainview Company, to restrain the issue and receiving of the bonds, on the ground that section 7 was unconstitutional, and the proceedings under it void. The defendants in the action all appeared and answered. On November 11, 1878, the court granted a preliminary injunction, restraining the town and its officers from issuing and the company from receiving the bonds. The action was tried on January 27, 1879, and on February 6th the court filed its decision in favor of defendants, and ordered judgment of dismissal. A stay of proceedings was granted pending a motion for a new trial, which motion was, on March 11th, denied. On the same day Harrington filed a bond for appeal to this court from the order, (which was merely a bond for costs,) and on May 12th, served due notice of appeal. On March 15, 1879, the district court rendered judgment dismissing the action on the merits, and dissolving the injunction. On September 12, 1879, Harrington appealed from the judgment, but with a bond for costs only. The appeal was duly heard and determined in this court, and on October 6, 1880, judgment was entered determining and adjudging that section 7 was unconstitutional, and reversing the judgment of the district court. (See *Harrington* v. *Town of Plainview*, 27 Minn. 224.)

On March 19, 1879, the plaintiff's board of supervisors, at the instance of the Plainview Company, passed a resolution directing the issue of the bonds, and on the same day they were issued pursuant to the resolution. The bonds were 100 in number, of $500 each, payable to the Plainview Railroad Company or to bearer. They were dated January 1, 1879, were payable twenty years thereafter, with interest at the rate of seven per cent. per annum, payable annually on the first day of January in each year, on presentation and surrender of the proper coupon attached thereto, each coupon being in form a promise by the town to pay to the holder, etc.

The recital in the bonds of the authority for issuing them was as follows:

"This bond is issued in pursuance of a mutual agreement between the said town and the said railroad company, which agreement was made in accordance with the laws of the state of Minnesota, and through and by a proposition made by said railroad company and duly accepted by said town, upon petition therefor signed by a majority of the resident tax-payers of said town, said agreement having been fully performed by the said railroad company on its part.

"This bond is issued in pursuance of the authority given for the purpose by the laws of the state of Minnesota, and in compliance with a resolution of the board of supervisors of said town."

After receiving the bonds the Plainview Company, in July, 1879, transferred them to the Chicago & Northwestern Railway Company, (a corporation, of Wisconsin and Illinois,) in consideration of $50,000, previously advanced to it by that company to aid in building its railroad. On July 10, 1879, the Chicago & Northwestern Company sold and delivered all the bonds and coupons to one Thomas, a citizen of Wisconsin, at 80 per cent. of their face value, and in the same month Thomas sold and delivered them to Samuel Marshall and Charles P. Ilsley of Milwaukee, and citizens of Wisconsin, at 87 per cent. of their face value. Some of the bonds were retransferred to Thomas and by him sold to other persons.

The Chicago & N. W. Ry. Co. and Thomas, when they received the bonds, had notice of all the facts and circumstances preceding and attending their issue and delivery to the Plainview Company, except as to the pendency of the Harrington suit. Marshall & Ilsley and the other purchasers had no knowledge, when they bought and paid for the bonds, of the existence or pendency of that suit, and had no notice of any defence to the bonds except such as appears on their face. On this point the court found in terms that Marshall & Ilsley "were thereby *bona fide* purchasers and holders for value thereof."

The plaintiff town refused to pay the interest coupons falling due January 1, 1881, and on January 29, 1881, Marshall & Ilsley, being citizens of Wisconsin, brought suit against the town in the United States circuit court for Minnesota, on 47 of these coupons, alleging themselves to be the owners of them and of the 47 bonds to which they belonged. A copy of one of the bonds, and of all the coupons

sued on, was annexed to the complaint in the action. The town appeared and defended, on the ground that the bonds were unlawfully and without authority issued by its officers, being issued under the pretended authority of the before-mentioned section 7, and without any other authority. In its answer it also set forth the proceedings prior to and attending the issue of the bonds, and the proceedings in the Harrington suit from its commencement to and including the judgment of this court on the appeal. In their reply Marshall & Ilsley pleaded that they were *bona fide* purchasers for value, with no notice of the matters relied on in defence except the recital in the bonds.

This suit of Marshall & Ilsley was tried at the June term, 1881, by the judges of the circuit court, (a jury being waived,) and on October 11, 1881, a decision was rendered in which it was found as a fact that Marshall & Ilsley were purchasers for value and without notice, as alleged in their reply, and on the same day judgment was entered for them and against the town 'for the amount of the coupons sued on, with interest, and for costs,—in all $1,746.98, and adjudging that in the hands of Marshall & Ilsley, as such innocent purchasers, the bonds and coupons were valid and enforceable obligations of the town. A writ of error upon this judgment was dismissed by the United States supreme court before this suit was brought, because the amount in controversy on the face of the record was insufficient to give jurisdiction.

On March 17, 1883, the town paid the judgment in full. Subsequent suits were brought in the same court by Marshall & Ilsley in 1881, 1882, 1883, and 1884, on other coupons, and judgments were recovered, some of which the town has paid, and it will be compelled to pay the rest. One only of these later suits was defended by the town, it being advised that the question of its liability was *res judicata* in that court.

Prior to the bringing of this suit Marshall & Ilsley sold all the bonds and coupons ever held by them (except the coupons they had sued on) to *bona fide* purchasers for value.

The court also found that in May, 1881, the defendant purchased and received a conveyance of the property and franchises of the

Plainview Company, pursuant to the act of 1881, for $225,000, which was their value, and that in making the purchase and receiving the conveyance, the defendant became liable for and agreed to pay the claim, demands, and rights of action alleged in the plaintiff's complaint. Judgment was ordered for plaintiff for $50,000, with interest at 7 per cent. per annum from January 1, 1879; a new trial was refused, and the defendant appealed.

The opinion of the U. S. circuit court in the suit by Marshall & Ilsley on the coupons was introduced in evidence by plaintiff with the rest of the record in that suit. It states the grounds on which the court decided the case, and is reported as *Marshall* v. *Town of Plainview*, 8 Fed. Rep. 783.

*Wilson & Bowers*, for appellant.

*C. K. Davis* and *Frank B. Kellogg*, for respondent.

VANDERBURGH, J. The town of Plainview seeks to recover the value of certain bonds, issued by its officers in its behalf, and alleged to have been procured by the Plainview Railroad Company without authority of law, and thereafter negotiated, and which the town has, in consequence, paid, or is obliged to pay, to the present owners. The case presents some novel features, and involves questions of considerable doubt and difficulty, in the solution of which the court can find but little aid from precedents.

The question of the validity of these bonds was considered and determined, in the case of *Harrington* v. *Town of Plainview*, 27 Minn. 224, (6 N. W. Rep. 777,) adversely to the railroad company, and that decision must be accepted without further discussion as the law governing this case. The bonds were not issued upon the vote of the electors of the town, in pursuance of Laws 1877, c. 105, § 5, (Gen. St. 1878, c. 34, § 96,) but in pursuance of section 7 of that act, (Gen. St. 1878, c. 34, § 98,) upon a petition of a majority of the tax-payers. The proceedings to procure such bonds were initiated and prosecuted by the railway company under the act, by filing with the town clerk its proposition in writing for the issuance to it of the bonds of the town, as provided by section 4, and thereafter in securing and filing the petition of the tax-payers as directed by section 7.

We have no hesitation in saying that the evidence in the case is

sufficient to uphold the finding of the trial court, that the bonds in controversy were issued to the Plainview Railroad Company, and were by its agents transferred to the Chicago & Northwestern Railway Company at their par value, and in consideration of the amount due the latter company, which had been previously advanced by the Chicago Company in aid of the construction of the Plainview Company's road.

Before the issuance of the bonds, the action above referred to was commenced, to enjoin the same, and, while the case was pending in this court, the bonds were issued and transferred. The evidence, however, does not warrant the conclusion that there was any actual fraud in the procurement or transfer of the bonds. Both railway companies were cognizant of the pendency of the action, and of the grounds of the alleged invalidity of the bonds; but the legal questions involved were still open and in dispute, and they were advised and believed them to be legal and valid.

It is affirmed by the trial court, upon sufficient evidence, that, except as appears upon the face of the bonds, Marshall & Ilsley, and others to whom they were subsequently transferred, had no notice of the suit, and were *bona fide* purchasers and holders for value. The Chicago & Northwestern Railway Company was a foreign corporation, and the subsequent purchasers of the bonds were and are citizens of other states. The bonds all recite on their face that they were issued in pursuance of the authority given for that purpose by the laws of the state of Minnesota, and in compliance with a resolution of the board of supervisors of the town, and also "in pursuance of a mutual agreement, which agreement was made in accordance with the laws of Minnesota, and through and by a proposition made by said railroad company, and duly accepted by said town, upon petition therefor signed by a majority of the resident tax-payers, said agreement having been fully performed by said railroad company on its part."

This court held in the *Harrington Case* that an agreement, consummated by proceedings under the provisions of the statute referred to, between the railway company and the majority of the tax-payers, could not, under the constitution, be considered as the lawful agree-

ment of the town, nor be of any binding obligation as such, and that bonds issued in pursuance thereof would be void, except in the hands of *bona fide* purchasers.

1. These bonds were invalid in the hands of the Plainview Company, and could not have been enforced by it. It was not material that the company had executed the so-called agreement on its part by building the road. It proceeded on its own motion and at its own peril. There was no agreement made with the town; for it was necessary to secure the consent of the voters, who are the contracting party in its behalf, and the supervisors are simply agents of the town to carry out an agreement duly authorized. *Rochester* v. *Alfred Bank,* 13 Wis. 432; *Lawson* v. *Schnellen,* 33 Wis. 288. The town, in its corporate capacity, has received nothing and withholds nothing. It has been guilty of no laches, has waived nothing, and there is no estoppel. It represents the public, and is itself entitled to be protected against the unauthorized acts of its own officers, when it can be done without injury to third parties. *Thomas* v. *City of Richmond,* 12 Wall. 349, 356; *Town of South Ottawa* v. *Perkins,* 94 U. S. 260.

2. In our opinion, the recitals in the bonds were sufficient to put the purchasers, Marshall & Ilsley or others, upon inquiry as respects the authority under which such bonds were entitled to be issued, and the manner in which they were in fact issued. As we construe the bonds, therefore, all purchasers are chargeable with notice of the invalidity thereof by the recitals.

3. Marshall & Ilsley, however, brought suit upon the coupons of these bonds as they matured, and recovered thereon in the circuit court of the United States for the district of Minnesota, in a sum less than $5,000, and the bonds have been duly adjudged and determined, in a trial upon the merits in that court, to be valid in their hands.

For the purposes of this case we are unable to see that it is material for us to inquire into the particular grounds of the decision of that court, as the result of the judgment is, in any event, to make the bonds valid negotiable securities held by Marshall & Ilsley as *bona fide* purchasers. In other words, it is sufficient to say, that court differs with this court upon the question of the validity of the bonds,

and accordingly adjudges the holders entitled to recover thereon, and notwithstanding the recitals therein.    The result would be the same if that court had differed with this court on questions of fact resting upon evidence *dehors* the bonds, as to their execution or the *bona fides* of their transfer to the present holders.    And the Plainview Company and defendant not having been parties to that action, this plaintiff is not estopped from litigating the questions involved in this case in the state courts.    The judgment of the circuit court cannot be reviewed or modified by the state courts; and it is not questioned, as we believe, in this case, that the result of the decision and judgment of the circuit court is to fix, irrevocably, the liability of the town for the whole amount of the indebtedness evidenced by the bonds.    *Beloit* v. *Morgan,* 7 Wall. 619.    It must therefore be deemed to have been conclusively settled that the bonds have been transferred to parties in whose hands they have become valid and legal obligations against the plaintiff town.

On the other hand, it was also conclusively determined that the bonds were void in the hands of the Plainview Company, by the judgment of this court in the *Harrington Case.*    Upon that question the Plainview Company had its day in court in the case referred to, and the issuance and disposition of the bonds must be treated by the state courts as unlawful and wrongful; and it is immaterial that the agents of the company entertained mistaken views of their legal rights in the premises.    *Comstock* v. *Hier,* 73 N. Y. 269, 275.

'If it be conceded that these bonds, when once placed on the market, were liable to pass into the hands of purchasers who would be entitled to enforce the same as valid negotiable securities in the United States courts, as the result in this case has proved, it must necessarily follow, we think, that plaintiff has a cause of action for damages.    Of course, the extent of the injury would depend upon the result of the negotiation of the securities, and in any particular case courts might differ in their determination of the question whether or not the purchasers were *bona fide* holders, upon evidence either *dehors,* or appearing on the face of the instruments.

If these bonds had not indicated the provisions of the statute under which they were issued, the plaintiff would have been entitled to an

v.36м—33

injunction to restrain the negotiation thereof, and if negotiated in the same manner as they have been, and purchased by the same parties, plaintiff's right of action for the face value of the bonds and interest would be unquestioned.   *Comstock* v. *Hier, supra; Thayer* v. *Manley*, 73 N. Y. 305.   But in their practical results, the case supposed and the case at bar are alike.   The Plainview Company transferred the same for full value in payment for moneys advanced for building the road, and Marshall & Ilsley paid nearly par for them. They were treated by all parties as valuable commercial securities, placed on the market and sold, and enforced as such against the plaintiff.   If the bonds are invalid, and the Plainview Company acquired no title to them as obligations of the town, upon what principle can it claim to be entitled to the proceeds as its property?

In *Comstock* v. *Hier, supra,* the court say: "It would be illogical, conceding the invalidity of the note in the hands of the defendants, and the non-liability of the plaintiff to them, to hold that the defendants would acquire a title to the proceeds of the note by a transfer of the same to a third person.   A party cannot fortify his title to property by a sale, as the title to proceeds upon sale will be the same as to the property before sale.   I am of the opinion that the plaintiff had an election of remedies,—trover for the conversion of the note, or an action for money had and received, for the amount which the defendants realized upon the sale of the note.   This follows from the conceded rule that the defendants were without title to the note, or authority to dispose of the same."   In Chit. Bills, *251, the author says: "Where a note or bill was void in its creation, the party entitled to the instrument may maintain an action of *detinue* or trover to recover the same or its value, or *assumpsit* for money had and received, if the proceeds of the bill have been received."   And in *Lamb* v. *Clark*, 5 Pick. 193, 197, the court say: "There are cases where an injured party may have his election of remedies, as where there has been a tortious taking of his property, he may bring trespass or trover, or he may waive both, and bring *assumpsit* for the proceeds when it has been converted into money."

In such case the maker is regarded as the party entitled to the note, as against the holder, whose transfer of the same is liable to

work an injury to the former, by imposing on him a liability which could not be enforced by the payee, so as to validate that which was before unlawful or unauthorized. And there appears to be no question that, where a person has wrongfully obtained possession of the property of another, and has sold and received the money for it, the real owner may waive the tort, and bring an action for money had and received; he has his election to sue for a conversion, or he may affirm the transaction, and recover of the wrong-doer for the proceeds, in which case the title to the property sold will be confirmed in the purchaser. *Solutio pretii emptionis loco habetur.* *Lamb* v. *Clark,* 5 Pick. 193; 4 Wait, Act. & Def. 472–475, and cases.

In this case, since the Plainview Company received the full face value of the bonds, the amount of the recovery, if any is had, would be the same in either form of action, and the allegations of the complaint and findings of fact are sufficient to support the action in either form. The title to the bonds has been confirmed in the present holders, and they have recovered, or will recover, the full amount thereof; and the liability of the town has been fixed through the acts of the Plainview Company in procuring and negotiating the same, which acts this court holds to have been unauthorized and wrongful. Upon what theory, then, can that corporation claim, either that it should be exempted from the consequences of such acts, or that it is entitled to retain the proceeds of the bonds? They are in form the bonds of the town, and were procured, held, and negotiated as its obligations, and were treated as negotiable securities, and set afloat as such; and that such proceedings should result in their enforcement must be presumed to have been intended and contemplated by the company, either in its own hands, or by purchasers who might occupy a more advantageous position; and it will not be permitted to object that the bonds are of no value, or allege its own wrong, for the purpose of defeating this action. *Comstock* v. *Hier,* 73 N. Y. 269, 276; *Lamb* v. *Clark, supra.* Had that company brought suit upon the bonds, the whole controversy would have been settled in one action; but the plaintiff is not estopped by the result of the suit of Marshall & Ilsley, to which the Plainview Company was not a party, and is not, therefore, concluded by the determination in that case.

4. The Winona & St. Peter Railroad is made defendant, because it has purchased and succeeded to all the rights of the Plainview Railroad Company, in pursuance of Sp. Laws 1881, c. 414, under which it was authorized to make such purchase, "subject to all demands, claims, and rights of action against said Plainview Company, arising out of the latter company's having heretofore obtained and disposed of certain bonds and coupons, purporting to have been issued by the towns of Plainview and Elgin to said Plainview Railway Company," etc. The purchasing company acquired the property and franchises of the Plainview Company by virtue of that act, and, of course, took the grant *cum onere,* and subject to the provisions and conditions of the act. *Chicago, etc., Ry. Co.* v. *Lundstrom,* 16 Neb. 254, (20 N. W. Rep. 198.)

We are of the opinion that the plaintiff was entitled to recover, and that the order denying a new trial should be affirmed.

BERRY, J., concurs.

GILFILLAN, C. J., and DICKINSON, J. We concur in the conclusion expressed in the foregoing opinion; but we would base the responsibility of the Plainview Company distinctly upon the following considerations: That company having procured the unauthorized execution and delivery to itself of these bonds, in form expressing the obligation of the town, and having negotiated the same so that they have thus come into the hands of parties who have enforced a recovery upon them, by proper action in a competent tribunal, the corporation is answerable for its own unauthorized acts, which have resulted in this injury to the town, unless this consequence—the recovery upon the bonds—is to be deemed too remote to afford a ground of legal liability. As respects the acts of the Plainview Company, this injurious consequence is not remote, but proximate. The damage suffered by the town consists in its being compelled to pay these bonds. But that is just what the Plainview Company must be deemed to have contemplated when it negotiated for, procured, and disposed of the bonds. No other purpose or object can be ascribed to it than that, either in its own hands, or in the hands of future holders, the bonds should be paid by the town voluntarily or by legal compulsion. One charged with responsibility for his own acts, resulting in injury to

another, should not be heard to say that the injurious consequence is too remote to subject him to liability, if he actually contemplated that consequence, although others might not have anticipated such a result. That the judgment, by which the liability of the town to pay the bonds has been conclusively established, was erroneous, does not make remote the damage thus resulting to the town, if this result—the enforcement of the bonds—was within the purpose of the company when it procured and negotiated them as the obligations of the town. It is argued that the company could not have anticipated an erroneous decision, and should not be held liable for the consequences of such a decision. Probably it did not anticipate or suppose that an adjudication holding the town obligated to pay the bonds would be *erroneously* made, for it may have supposed the bonds to be valid and rightfully enforceable; but the fact that it did not suppose that such an adjudication would be *erroneous,* does not make remote the damage complained of. It is proximate, and liability follows because the company procured and negotiated these unauthorized securities as the obligations of the town, to be enforced as such, and because they have been so enforced in a court having jurisdiction, as the corporation anticipated they would be.

MITCHELL, J., dissents.