Summers, J.
The case involves the construction of Sections 22b, 871 and 2834a, Revised Statutes. Section 2834a is as follows: “The trustees of any township, the board of education of any school district and the commissioners of any county for the purpose of extending the time of payment of any indebtedness, which from its limits of taxation such township, school district or county is unable to pay at maturity, shall have power to borrow money or to issue bonds of such township, school district or county, so as to change but not to increase the indebtedness in such amounts and for such length of time and at such rate of interest, as the trustees, board of education or commissioners may deem proper, not to exceed the rate of six per centum per annum, payable annually or semi-annually.
*300 “Or when it shall appear to the trustees, board of education or commissioners of any township, school district or county to be for the best interests of such township, school district or county to renew, refund or extend the time of payment of any bonded indebtedness which shall not have matured and thereby reduce the rate of interest thereon, such trustees, board of education or commissioners shall have authority to issue for that purpose new bonds, and to exchange the same with the holder or holders of such outstanding bonds if such holder or holders shall consent to make such exchange and to such reduction of interest.
“Provided, however, that no indebtedness of any township, school district or county shall be funded, refunded or extended unless such indebtedness shall first be determined to be an existing, valid and binding obligation of any such township, school district or county by a formal resolution of the trustees, board of education or commissioners of any such township, school district or county, which resolution shall so state the amount of the existing indebtedness to be funded, refunded or extended, the aggregate amount of bonds to be issued therefor, their number and denomination, the date of their maturity, the rate of interest they shall bear and the place of payment of principal and interest.
“And for the payment of the bonds issued under this section the township trustees, board of education or county commissioners shall levy a tax, in addition to the amount otherwise authorized; every year during the period the bonds have to run *301 sufficient in amount to pay the accruing interest and the bonds as they mature.”
The section was first enacted in 1896 (92 Ohio Laws, 6), and comprised only the first paragraph. It was amended the same year (92 Ohio Laws, 33), by the addition of the proviso, being the third paragraph; in 1898 (93 Ohio Laws, 233), by the addition of the fourth paragraph, providing for the levy of the tax, and in 1904 (97 Ohio Laws, 514) by the addition of the second paragraph providing for an exchange of bonds.
The wording of the statute is not accurate, but it clearly appears that authority is given, under the circumstances stated, to borrow money, or to issue bonds, and to issue new bonds and exchange them for outstanding bonds. It is contended that the negotiable promissory notes held by the banks were bonds, and that the commissioners were authorized to issue new bonds and to exchange them for the notes. In its broad sense a bond comprises a negotiable promissory note, under seal, but' a promissory note is not a municipal bond within the meaning of those words as understood in the commercial world. A negotiable promissory note generally is made payable to a person, or order, and is for a comparatively short period of time, while a bond generally is made payable to bearer, has a long time to run and has negotiable interest coupons attached. It is easier to distinguish them than to point- out the distinction.
“By the term ‘municipal bonds’ is meant evidences of indebtedness, issued by cities, incorporated towns, counties, townships, school districts, and other public corporate bodies, negotiable in *302 form, payable at a designated future time, bearing interest payable annually or semi-annually, and usually having coupons attached evidencing the several installments of interest.
“Municipal bonds issued in the usual negotiable form, when authorized by law, have all the attributes of negotiable commercial paper of individuals or private corporations; they are usually made payable to bearer; they pass by delivery, and, like other negotiable instruments, are not subject to equities. between prior holders, in the hands of bona ñde purchaser for value, before due, without notice of such equities. Municipal bonds, when authorized by law, may be issued to raise money for the purpose of constructing or carrying on authorized public improvements or works. They represent a large portion of the wealth of the country, and their commercial value in the market depends very largely upon their negotiable character.” Harris on Municipal Bonds, 8.
Practically the same definition is given by Judge Hainer in his work entitled “The Modern Law of Municipal Securities,” Section 4. Daniel on Negotiable Instruments, Section i486, says they are “A new species of security for money which has sprung at once to the front rank of negotiable instruments.. They constitute a vast portion of the wealth of this country.” In Mercer Co. v. Hacket, 1 Wallace, 83, Mr. Justice Grier says: “This species of bonds is a modern invention intended to pass by manual delivery and to have the qualitiés of negotiable paper; and their value depends mainly upon this character.” .
The power to issue bonds, or other negotiable *303 securities, is not necessarily incident to a power expressly conferred upon a municipal corporation to borrow money, but generally the one power as well as the other must be expressly granted. In Merrill v. Town of Monticello, 138 U. S., 673, Mr, Justice Lamar says: “It is admitted that the power to borrow money, or to incur indebtedness, carries with it the power to issue the usual evidences of indebtedness by the corporation to the lender or other creditor. Such evidences may be in the form of promissory notes, warrants, and, perhaps, most generally, in that of a bond. But there is a marked legal difference between the power to give a note to a lender for the amount of money borrowed, or to a creditor for the amount due, and the power to issue, for sale in open market, a bond, as a commercial security, with immunity, in the hands of a bona ñde holder for value, from equitable defenses.” And again he says: “To borrow money, and to give a bond or obligation therefor, which may circulate in the market as a negotiable security, freed from any equities that may be set up by the'maker of it, are, in their language and legal effect essentially different transactions.” In Brenham v. German American Bank, 144 U. S., 173, where the charter authorized the city to borrow money for general purposes, on the credit of the city, it is held that the city in the exercise of this power, could give to the lender, as a voucher, for the payment of the money, evidence of indebtedness in the shape of non-negotiable paper, but that it did not authorize it to issue negotiable paper or .bonds, unimpeachable in the hands of a bona ñde holder.
*304 Section 2834a does not confer power to borrow and to issue bonds as evidence of the debt, the power given is to borrow, or to issue bonds; and as originally enacted it read power to issue bonds or to borrow money, and this necessarily excludes the implication that the power to borrow includes the power to issue bonds.
Two of the notes recite that they are issued under authority of Section 871. That section authorizes the commissioners to borrow money and to issue the bonds of the county to secure the payment óf principal and interest thereof, but Section 872 provides that the bonds so issued shall be in sums not more than one thousand dollars each. These two notes are in the sum of $12,750.00 each. Moreover, each of the four instruments recites that it is a note. However, it is not necessary to determine whether the statute confers power to give negotiable promissory notes, for if the word “bonds” is used to designate a security different from a negotiable promissory note then the authority to issue new bonds and to exchange them for outstanding bonds does not include power to issue and exchange bonds for negotiable promissory notes or evidences of indebtedness other than bonds. There is a reason why such an exchange should be limited to bonds. Section 22&, Revised Statutes, enacted in 1883, provides that all bonds issued by boards of county commissioners shall be sold to the highest bidder after being advertised, and it may well be that in such case the legislature supposed it would be in the interest of the public to permit new bonds to be issued, bearing a less rate of interest, and to be exchanged for the out *305 standing bonds. Moreover, if the power to exchange is not limited to such an indebtedness, for which bonds had been advertised and sold, then the last amendment added nothing to the section, for it already conferred power to fund, refund or extend.
The bonds having been issued and delivered, without authority of law, to the trust company in exchange for the notes, and the bonds having passed from the trust company to a bona fide holder for value, the question remains whether the judgment against Briggs & Company and the trust company, as for a conversion of the bonds, is authorized.
The petition does not state a cause of action at law, in which the defendants, Briggs & Company and the trust company, could be joined as defendants with the commissioners and be required to answer in the Muskingum court, but' it does state grounds for an injunction, that was the primary relief sought, and respecting that the defendants were properly joined and summoned and appeared without objection. While the suit was pending the commissioners issued and delivered the bonds to the defendant, the trust company, and it sold and delivered them to purchasers beyond the jurisdiction of the court, so that the primary relief sought could not be granted. It is well settled that, “If a court of equity obtains jurisdiction of a suit for the purpose of granting some distinctively equitable relief, such, for example, as the specific performance of a contract, or the rescission or cancellation of some instrument, and it appears from facts disclosed on the hearing, but *306 not known to the plaintiff when he brought his suit, that the special relief prayed for has become impracticable, and the plaintiff is entitled to the only alternative relief possible of damages, the court then may, and generally will, instead of compelling the plaintiff to incur the double expense and trouble of an action at law, retain the cause, decide all the issues involved, and decree' the payment of mere compensatory damages.” i Pomeroy’s Equity Jurisprudence, Section 237. A case illustrative of this practice is referred to by Judge Burnet in the opinion in Rees v. Smith, 1 Ohio, 124. He says: “We consider it no objection to the decree in this case, that it is for the payment of money only. Such decrees are frequent. The case of Turner v. Dayton and others, decided at the last term, in Champaign, is in point. The bill was filed for a specific performance. The allegations of the bill were sustained, but Dayton having sold the land to his co-defendants, who had purchased for a valuable consideration without notice, a specific performance could not be decreed. The court, however, having become legally possessed of the case, refused to turn the plaintiff round, retained the cause and under the general prayer for relief decreed to the complainant the value of the land, which was admitted to be the sum for which it had been sold, and which was then in the hands of the defendant, Dayton.”
Piad these bonds remained in the hands of the trust company the court by its decree could have required that they be surrendered, but while the suit was pending they passed beyond the reach of the court, and we do not think there can be any doubt *307 that a cause of action exists against the parties who obtained them and placed them beyond the the jurisdiction of the court as for a cpnversion of the bonds, or for money had and received, for the amount which the defendant .realized on their sale. In a somewhat similar case, the Town of Plainview v. Winona & St. Peter R. Co., 36 Minn., 505, it is said: “If it be conceded that these bonds, when once placed on the market, were liable to pass into the hands of purchasers who would be entitled to enforce the same as valid negotiable securities in the United States courts, as the result in this case has proved, it must necessarily follow, we think, that plaintiff has a cause of action for damages.” In Comstock v. Hier, 73 N. Y., 269-275, it is said: “It would be illogical, conceding the invalidity of the note in the hands of the defendants, and the non-liability of the plaintiff to them, to hold the defendants would acquire a title to the proceeds of the note by a transfer of 'the same to a third person. A party can not fortify his title to property by a sale, as the title to proceeds upon sale will be the same as to the property before sale. I am of the opinion that the plaintiff had an election of remedies — trover for the conversion of the note, or an action for money had and received, for the amount which the defendants realized upon the sale of the note. This follows from the conceded rule that the defendants were without title to the note, or authority to dispose' of the same.” In Chitty on Bills, *251, the author says: “Where a note or bill was void in its creation, the party entitled to the instrument may maintain an action of detinue or trover to .recover *308 the same-or its value, or assumpsit for money had and received, if the proceeds of the bill have been received.” And in Lamb, Exr., v. Clark, 5 Pick., 193, 197, the court say: “There are cases where an injured party may have his election of remedies, as where there has been a tortious taking of his property, he may bring trespass or trover, or he may waive both, and bring assumpsit for the proceeds when it has been converted into money.” See also Farnham v. Benedict, 107 N. Y., 159; Webb v. City Council of Alexandria, 33 Gratt., 168.
The doctrine of lis pendens does not apply to negotiable securities .purchased before maturity, and there is no question as to the good faith of the trust company, the prosecuting attorney of the county advised that the statute authorized the commissioners to exchange the bonds for the notes, hut the trust company received the bonds in exchange for the notes and is charged with knowledge that the action of the commissioners was unauthorized. There is, however, no evidence that will support the judgment against Briggs & Company, and the judgment is reversed-as to it and as to the trust company it is affirmed.

Judgment reversed as to Briggs & Company.

Judgment affirmed as to trust company.

Price, C. J., Shaucic, Crew and Spear, JJ., concur.