Argued November 21, 1919, affirmed January 13, rehearing denied
February 17, 1920.

# PULLEN *v.* SCHOOL DISTRICT No. 3.

(186 Pac. 9; 187 Pac. 624.)

**Schools and School Districts—Bonds Incontestable After Execution, Registration, and Delivery to Purchaser.**

1. Under Laws of 1913, page 299, legality of school district bonds executed, registered and delivered to purchaser as there provided after an election for their issuance, are incontestable, in the absence of fraud or some fatal defect in the proceedings, known to the purchaser at or before purchase.

## ON PETITION FOR REHEARING.

**Schools and School Districts—Contest of Bond Issue Election not Provided for.**

2. Contests of election are authorized by statute only as between nominees claiming election to an office, and are not provided as such respecting elections about measures submitted to the people, as an issuance of bonds by a school district.

**Schools and School Districts—No Contest of School District Bond Issue Election in Absence of Statutory Authority.**

3. In the absence of statute permitting contest of an election whereby school district bonds were authorized, the Supreme Court cannot admit the legitimacy of contestants' complaint, and the question of whether or not certain voters were authorized to vote is not available to contestants; the decision of the election tribunal created by Laws of 1913, Chapter 172, Section 2, to decide such matters being final in the absence of fraud.

**Schools and School Districts—Determination of Judges of Bond Issue Election as to Validity Conclusive on Collateral Attack.**

4. Where judges and a clerk were properly chosen pursuant to Laws of 1913, Chapter 172, Section 2, to officiate at a school district bond issue election, a determination of such tribunal as to the validity of the election in the absence of fraud must stand as against collateral attack in the absence of any statute affording right of contest, appeal or other review of the decision.

From Multnomah: GEORGE W. STAPLETON, Judge.

Department 1.

This is a suit wherein it is sought to compel the immediate redemption and cancellation of a bond issue of the defendant school district, and to restrain the ex-

95 Or.—19

penditure of the proceeds of the sale of such bonds for any other purpose than such redemption. The plaintiffs base their right to relief upon an alleged conspiracy on the part of all of the defendants, with the exception of the county treasurer, to foist upon the taxpayers of the district the burden of an illegal issue of bonds in the sum of $20,000. The wrongful acts of the conspirators, as set out in the complaint, consist of wrongfully permitting certain residents of the district to vote when in fact they were not qualified electors, because their names did not appear upon the last assessment-roll as the owners of property subject to taxation, and they were permitted to vote by virtue of their membership in a local corporation known as the Greater Parkrose Club, which did own real estate in the district, subject to taxation, as disclosed by the last assessment-roll. It is averred that this corporation does not issue stock, shares, or evidences of ownership to its members, and has no authority so to do, and no member thereof has any ownership in the corporation or its property. It is alleged that a true canvass and return of the votes cast by qualified electors would have disclosed a substantial majority against the issue of bonds. It is further asserted that the conspirators disobeyed the statute giving the state land board the preferential right to purchase the bonds at par, in that the bonds were sold at par without first offering them to the state land board. The allegations of the complaint enter into great detail, as to the part taken by the several defendants in the various steps which are claimed to have been illegal.

There were four separate answers filed by the defendants in logically related groups, all of which deny participation in any conspiracy, or any illegality in the proceedings or conduct of the several groups. The de-

fendants Keeler Bros., the purchasers of the bonds, and Fred M. Glenn, their resident agent, pleaded affirmatively that prior to the delivery to them of the bonds, they obtained from the school district a certified copy of all the proceedings relating to the issue and sale of the bonds, wherein the proceedings were certified by the proper officials, and relying thereon, they had paid to the district the sum of $20,400 therefor, without knowledge or notice that there was any defect, error or misstatement in such proceedings, and that before this suit was commenced they sold and at that time had parted with the possession of the bonds and with the title thereto and had no interest therein.

Replies were filed, and a trial was had, resulting in a decree for defendants, and plaintiffs appeal.

AFFIRMED.

For appellants there was a brief over the names of *Mr. Ralph R. Duniway* and *Mr. James R. Bain,* with an oral argument by *Mr. Duniway.*

For respondent, School District No. 3, there was a brief over the name of *Messrs. Wilson & Gutherie,* with an oral argument by *Mr. J. G. Wilson.*

For respondents, Keeler Bros. and Fred Glenn, there was a brief over the name of *Messrs. Teal, Minor & Winfree,* with an oral argument by *Mr. Wirt Minor.*

For respondents, *Walter H. Evans,* District Attorney, and *John M. Lewis,* there was a brief submitted over the name of *Mr. George W. Mowry.*

BENSON, J.—There are a number of questions presented and argued upon this appeal, but the view which

we take of the matter renders a discussion of many of them unnecessary.

1. We may assume at the outset that the Circuit Court had jurisdiction of the subject matter. Chapter 172 of the Laws of Oregon for 1913 provides that after an election for the issuance of school district bonds—

"All such bonds shall be signed by the chairman of the district school board, attested by the district clerk, and registered by the county treasurer; and the interest coupons thereto annexed shall be signed by said chairman and clerk, by their original or engraved facsimile signatures.

"The county treasurer shall register each bond in a book kept for that purpose in his office, noting the school district, amount, date, time and place of payment, rate of interest and such other facts as may be deemed proper, and cause said bonds to be delivered promptly to the purchasers thereof upon payment therefor, and he shall hold the proceeds of the sale of said bonds subject to the order of the district board to be used solely for the purpose for which said bonds were issued; and when said bonds shall have been so executed, registered and delivered, their legality shall not be open to contest by such school district or by any person or corporation for or on its behalf for any reason whatever."

It is not necessary to consider the question of whether or not there may be any legal limitation to the broad language of the last provision above quoted, but it is beyond question that in the absence of fraud or some fatal defect in the proceedings, known to the purchaser of the bonds at the time of, or prior to such purchase, all further questioning is foreclosed. The bonds in the present case were executed, registered and delivered in strict accordance with the requirements of the statute, and after a very careful investigation of the evidence in the case, we find no indication whatever of

any conspiracy or any fraud, or that the purchasers of the bonds had any notice or knowledge of any irregularity or defect in the proceedings which resulted in the issue of the bonds.

The decree of the lower court is therefore affirmed.

AFFIRMED.

McBRIDE, C. J., and BENNETT and HARRIS, JJ., concur.

Denied February 17, 1920.

PETITION FOR REHEARING.

(187 Pac. 624.)

On petition for rehearing.

REHEARING DENIED.

*Mr. Ralph R. Duniway* and *Mr. James R. Bain,* for the petition.

*Messrs. Wilson & Guthrie,* for respondent, School Dist. No. 3, *contra.*

*Messrs. Teal, Minor & Winfree,* for respondents, Keeler Bros. and Fred Glenn, *contra.*

*Mr. George W. Mowry,* for respondents, Walter H. Evans, District Attorney, and John M. Lewis, *contra.*

BURNETT, J.—The petition for rehearing contends that this court should have directly examined into the question of whether or not certain electors who voted at the bond election mentioned in the pleadings were really qualified to vote on that question. We remember that the essence of the complaint is that the directors of the district, its clerk, the judges and the clerk

of the election, the district attorney of Multnomah County, the purchasers of the bonds, and their agents all entered into a conspiracy to defraud the district by loading upon it an unauthorized indebtedness to be accomplished by permitting fraudulent voting in the election called for the purpose of sanctioning the issuance of bonds. Section 2 of Chapter 172 of the Laws of 1913 authorizes the school districts of the state to contract a bonded indebtedness for the purpose of providing funds for the erection of school buildings, the purchase of sites therefor, etc. The school board may, and when petitioned by ten legal voters of the district must, give notice of an election to determine whether bonds shall be issued for the purpose named. The form of the notice is prescribed by the statute. This excerpt is taken from subdivision 1 of that section:

"Immediately prior to opening the polls, the legal voters of the district shall convene (the chairman or some other member of the district school board calling the meeting to order), and elect three judges and a clerk who shall conduct the election, and when the polls are closed, canvass the vote and certify the result to the district school board, the county treasurer and the county superintendent."

It is said further in subdivision 2:

"If a majority of the ballots cast are 'Bonds—Yes,' the district school board shall, without a further vote of the legal voters and as soon as practical, issue the negotiable coupon bonds of the district, not exceeding in par value the amount stated in the notice of election and for the purpose therein named, bearing not to exceed legal interest per annum, payable semi-annually, redeemable at the pleasure of the district but due and payable absolutely 20 years from date; * * all such bonds shall be sold by the district school board for the best price obtainable, but in no event for less than par and must recite that they are issued under the provi-

sions of this act; all such bonds shall be signed by the chairman of the district school board, attested by the district clerk, and registered by the county treasurer; and the interest coupons thereto annexed shall be signed by said chairman and clerk, by their original or engraved facsimile signatures.''

And in subdivision 3:

''The county treasurer shall register each bond in a book kept for that purpose in his office, * * and cause said bonds to be delivered promptly to the purchasers thereof upon payment therefor, and he shall hold the proceeds of the sale of said bonds subject to the order of the district board to be used solely for the purpose for which said bonds were issued; and when said bonds shall have been so executed, registered and delivered, their legality shall not be open to contest by such school district or by any person or corporation for or on its behalf for any reason whatever.''

2. No pretense is made in the complaint that the bond election was not legally called or that regular notice was not given, nor is it contended that the legal voters did not elect the three judges and clerk who conducted the election. We thus have a tribunal chosen by the people themselves in popular assembly, authorized to conduct the election and certify the result to the school board, the county treasurer, and county superintendent. The statute does not authorize any appeal, review or contest of the decision of that tribunal. Contests of elections are authorized by statute only as between nominees claiming to be elected to an office. Contests as such are not provided for respecting elections about measures submitted to the people. As said in *Bradburn* v. *Wasco County,* 55 Or. 539 (106 Pac. 1018):

''The determination of election contests is a judicial function only, so far as authorized by statute.''

The same language is quoted in *Tazwell* v. *Davis,* 64 Or. 325 (130 Pac. 400).

3. In substance and effect the effort of the complaint is to contest the election by which the bonds were authorized. In the absence of a statute permitting this to be done, we cannot entertain that contention. The question of whether or not the voters mentioned were authorized to vote is not available in this case. The decision of the tribunal created by law and chosen by the people to decide such matters is final, in the absence of some statute authorizing us to review its determination, or unless fraud is shown sufficient to vitiate the proceeding. It was in reference to this last feature that the court, speaking by Mr. Justice BENSON, used the language:

"But it is beyond question that in the absence of fraud or some fatal defect in the proceedings, known to the purchasers of the bonds at the time of, or prior to such purchase, all further question is foreclosed."

4. We must presume that the election was regularly called, and that the assembled electors regularly chose the judges and clerk of the election. It is not alleged in the complaint that any objection was urged by challenge or otherwise against the right of the individuals to vote who are named in the complaint as illegal voters. Neither is it intimated that the election officers had any notice that any of those offering to vote were not entitled to vote. Fraud cannot be predicated on such a complaint. In other words, given a tribunal properly organized to decide a question, its determination, in the absence of fraud, must stand as against collateral attack in the absence of any statute affording a right of contest or appeal, or otherwise reviewing that decision. The proceeding before us was com-

menced too late, in any event, to raise the question, for the statute expressly says that:

"When said bonds shall have been so executed, registered and delivered, their legality shall not be open to contest by such school district or by any person or corporation for or on its behalf, for any reason whatever."

In the original brief, under the second subdivision of their points and authorities the plaintiffs maintain that:

"This is a suit to cancel the bonds issued by the Parkrose School District."

In their brief in support of the petition for rehearing, they argue vehemently that "this suit is not to contest the legality of the bonds, but to require the defendant to redeem the bonds," and they say that the bonds can be paid at any time. Even so; but the statute already quoted makes them redeemable at the pleasure of the district, but due and payable absolutely twenty years from date. The statute is not an authority for the contention of the plaintiffs. The district is not, so far as the record shows, attempting to exercise its option to redeem the bonds. If this be considered as a suit to redeem the bonds, it is not at the pleasure of the district, but at the behest of some discontented electors.

The authorities cited in the brief for rehearing to the effect that the plaintiffs are entitled to the relief of a judgment for the school district for whatever damages it has suffered or will suffer as a result of the bond issue, are based upon the principle that fraud has been shown in the genesis of the bonds, or that there was no authority in law for their issuance. For instance, in *Plainview* v. *Winona etc. R. R. Co.*, 36 Minn. 505 (32 N. W. 745), the town, under an unconstitutional

statute, issued bonds in aid of a railroad. The defendant, the beneficiary, took them with full knowledge of their invalidity and negotiated them to citizens of another state for full value. The United States court gave judgment in favor of the holders against the town for unpaid coupons, holding that they took in good faith. The state court held in the case under consideration that the bonds were void; that the defendant participated in their issuance, knowing all the facts, and had negotiated them so that the town could not recall them, and hence equity would give a money relief to cover the liability of the town as declared by the federal court.

In *Farnham* v. *Benedict,* 107 N. Y. 159 (13 N. E. 784), the bonds were issued in aid of a fictitious railroad company, which failed to perform the consideration of the bonds. The court held the bonds void except as to innocent holders, but held liable to the extent for which the town was liable the defendants who negotiated the same with knowledge of their defects. In *McMillan* v. *Barber Asphalt Paving Co.,* 151 Wis. 48 (138 N. W. 94, Ann. Cas. 1914B, 53), the contract for paving under which the bonds were to be issued was vitiated by the fraud of bribing an alderman of the city, who was thus induced to assent to the contract. Litigation was instituted to prevent the execution of the contract and to declare it void. But, notwithstanding the pendency of this litigation, the company performed the contract and thus apparently authorized an imposition upon the property of the plaintiff to pay its proportionate cost of the pavement. The court there held that, on account of the plaintiff's property having been made liable to innocent holders of the bonds, the company which had brought about this situation in pursuance of the fraud practiced should save him harmless

from the impost by paying the amount thereof. In *Luetzke* v. *Roberts,* 130 Wis. 97 (109 N. W. 949), the defendant by means of fraud induced the plaintiff to sign a promissory note. Pending the plaintiff's suit to cancel the same, the defendant sold it to an innocent purchaser. As it was thus placed beyond the power of the court, the final decree for the plaintiff was for a money damage in lieu of the paper, as equitable relief instead of the cancellation. This feature is common to all the precedents cited in the brief supporting the petition for rehearing. As pointed out in the former opinion, there is no evidence of fraudulent conduct on the part of anyone connected with this proceeding; in fact, none is set forth in the complaint except statements amounting only to conclusions of law. On this account the precedents cited by the plaintiffs are not in point.

Reduced to its lowest terms, the most that is charged in the complaint is that the judges of the election decided erroneously the matter of the right of certain individuals to vote. In the absence of fraud or want of jurisdiction, neither of which is shown in the present procedure, we cannot review the decision of the judges of which the plaintiffs complain. We adhere to the former opinion.    AFFIRMED.   REHEARING DENIED.

MCBRIDE, C. J., and BENSON, J., concur.

HARRIS, J., concurs in the result.