GEORGE F. COMSTOCK, Appellant, *v.* GEORGE P. HIER et al., Respondents.

| 73 | 269 |
|-----|-----|
| 117 | 504 |
| 73 | 269 |
| 120 | 140 |
| 73 | 269 |
| 141 | 386 |

The possessor of negotiable paper has no better or other title to the proceeds arising from the sale thereof than to the paper itself, and if he has no title to the latter he can be compelled to account to the true owner for the proceeds.

It is immaterial whether the paper is the obligation of the party entitled thereto and of no validity in the hands of the wrong-doer, or the obligation of a third person.

A maker of a note or acceptor of a bill negotiating the paper is not an assignor; and the fact that there are other parties contingently liable as sureties does not affect the character of the transaction.

Plaintiff indorsed a promissory note for the accommodation of the makers for a special purpose; instead of being used for such purpose it was transferred by the makers to defendants in payment of an antecedent debt. Defendants transferred the same before maturity to a *bona fide* holder for value, who collected it of plaintiff. In an action to recover the amount paid, *held*, that defendants were liable; that having no title or right to the note the transfer by them was a conversion; and that it was immaterial that they acted in good faith and in ignorance of plaintiff's rights.

Also *held*, that the damages sustained by plaintiff was the amount he had been compelled to pay.

It *seems*, that the plaintiff in such case has an election either to bring an action of trover for the conversion of the note, or for money had and received, to recover the money realized by defendant on sale thereof.

Also *held*, that as defendants were not assignees of the makers within the meaning of section 399 of the Code, that plaintiff was a competent witness to prove transactions with one of the makers who was dead at the time of the trial.

The makers of the note so indorsed executed to plaintiff a bond and mortgage securing this and other indorsements; they were adjudged bankrupts, and an assignee in bankruptcy appointed. Plaintiff entered into an agreement with the assignee by which it was agreed that plaintiff should take the mortgaged property and should take care of certain

paper so indorsed, including the note in question, so that the general estate of the bankrupt should not be charge dtherewith, with the proviso, however, that nothing contained in the agreement should affect in any manner plaintiff's right to defend against the note, or his remedies against any person in respect thereto. *Held,* that the agreement did not release, extinguish or affect the plaintiff's right of action against defendants.

(Argued March 20, 1878; decided April 9, 1878.)

Appeal from order of the General Term of the Supreme Court in the fourth judicial department, reversing a judgment in favor of plaintiff, entered upon the report of a referee.

The complaint in this action alleged in substance, and the referee found, that on the 25th day of March, 1872, plaintiff indorsed the promissory note of the firm of Jaycox & Green, made payable to his order for the accommodation of the makers, and under the agreement that the same should be used only for the purpose of taking up and retiring a former note so indorsed; that the makers, instead of using the note as agreed, transferred the same to defendants as collateral security for the payment of an antecedent loan, they parting with no value and relinquishing no rights on receipt thereof; that defendants procured the note to be discounted before maturity for their benefit; that the said note was protested for non-payment, and the holder brought suit thereon against plaintiff, who put in an answer; that plaintiff notified the defendants of said suit, and that if the note was collected against him he should hold him responsible, and requested them to defend; that judgment was recovered in said suit which was affirmed on appeal, and that plaintiff paid in satisfaction of the judgment the sum of $2,884.36, which sum plaintiff asked to recover. It further appeared, and the referee found in substance, that Jaycox & Green executed to plaintiff a bond and mortgage to secure his indorsements for them; that in April, 1872, said Jaycox & Green were adjudged bankrupts; that an agreement was entered into between plaintiff and the assignee in bankruptcy of said firm, in and by which it was agreed that plaintiff should take and have the mortgaged property, and in consideration

thereof should take care of certain paper indorsed by him, including the note in question, so that the general estate of the bankrupts should not be charged therewith and should be protected harmless therefrom. The agreement, however, contained a clause to the effect that it being claimed by plaintiff that said note was diverted and put in circulation for a wrongful purpose, and if he paid the same that he could have recourse to other parties, it was therefore understood that nothing therein contained should affect in any manner his right to defend himself against said note, or his remedies against any person in respect thereto.

Mr. Green, of the firm of Jaycox & Green, died before the trial. Plaintiff was examined as a witness in his own behalf and was permitted to testify to transactions between himself and Jaycox & Green. These were objected to as incompetent under section 399 of the Code. The particulars in reference thereto and further facts appear in the opinion.

*Frank Hiscock*, for appellant. The note having been wrongfully and unlawfully diverted by the makers and defendants having received it as a mere collateral they acquired no title to it and no right to inforce it against plaintiff as indorser. (20 J. R., 637; 10 id., 231; 15 id., 270; 3. J. Ch., 54; 9 Wend., 170; 1 Den., 583; 53 N. Y., 650; 26 id., 450: 43 Barb., 379; 1 Paige, 134, 135; 6 Hill, 93; 15 N. Y., 196.) A covenant not to sue one of two persons bound by the same liability, whether arising by contract or *ex delicto*, cannot be pleaded as a release or defense by the other. (*Harrison* v. *Close*, 2 J. R., 450; *Rowley* v. *Stoddard*, 9 id., 209; *Deeney* v. *Derbey*, 20 id., 463; *Bank* v. *Messenger*, 9 Cow., 38; *Frank* v. *Green*, 5 Barb., 460.) By the delivery of the note no relation of assignors and assignee was created between the makers and defendants. (4 Duer, 108; 2 Den., 621; 16 Barb., 548; 10 J. R., 44, 45.)

*Wm. C. Ruger*, for respondents. As the agreement by which defendants came into possession involved an extension

of time they were such *bona fide* holders as could sue plaintiff thereon. (*Fellows* v. *Prentiss*, 3 Den., 512; *Bangs* v. *Mosher*, 23 Barb., 478; *Alb. Ins. Co.* v. *Devendorf*, 43 id., 444: *Place* v. *McIlvaine*, 38 N. Y., 96; *Hubbard* v. *Gurney*, 64 id., 466; *Tobey* v. *Barber*, 5 J. R., 68; *Myers* v. *Wells*, 5 Hill, 464.) When the suit was commenced plaintiff had ceased to be an accommodation indorser and could no longer claim protection as such. (*Moore* v. *Ward*, 1 Hilton, 337; *Chilton* v. *Robbins*, 4 Ala., 223; *Rice* v. *Mather*, 3 W. R., 62; *Moore* v. *Paine*, 12 id., 126; *Bradford* v. *Hubbard*, 8 Mass., 155; *Cameron* v. *Chappell*, 24 W. R., 94; Daniel on Negotiable Instr., § 794.) The transfer of this note to the defendants involved no wrong on their part, and in the absence of an agreement as to a specific appropriation of the note, they could have recovered the amount thereof from the plaintiff, even though it may have been given in payment for an antecedent debt. (*Seneca Co. Bk.* v. *Neass*, 3 N. Y., 442; *Aagwam Bank* v. *Strever*, 18 id., 502; *Mohawk Bank* v. *Corey*, 1 Hill, 513; *Rutland Bank* v. *Buck*, 5 W. R., 170; *Cole* v. *Salpaugh*, 48 Barb., 105; *Schepp* v. *Carpenter*, 51 N. Y., 602; *Hoge* v. *Lansing*, 35 id., 138.) A release or discharge of one of several joint obligors or joint tort-feasors by the voluntary act of the obligee or the party injured operates as a discharge of the other obligors or wrong-doers and a satisfaction of all claims against them. (*Barrett* v. *Third Ave. R. R. Co.*, 45 N. Y., 628; *Bronson* v. *Fitzhugh*, 1 Hill, 185; *Merchants' Bk.* v. *Curtis*, 37 Barb., 317; *Brown* v. *Marsh*, 7 Vt., 1320; *Knickerbocker* v. *Colver*, 8 Cow., 111; *Cocke* v. *Jennor*, Hobart, 66; *Corbett* v. *Barnes*, Sir Wm. Jones, 377; *Livingston* v. *Bishop*, 1 J. R., 290; *Kasson* v. *People*, 44 Barb., 347; *Lovejoy* v. *Murray*, 3 Wall., 1; *Brinsmead* v. *Harrison*, L. R. [6 C. P.], 584; S. C. in Exch. Ch. L. R. [7 C. P.], 547; *Joslyn* v. *Cowee*, 52 N. Y., 90; *Ruble* v. *Turner*, 2 Hem. & Mumf., 38; 6 Bacon's Abr. Title, Release, G. 625.) A discharge of the acceptor of a bill, or the maker of a note, precludes the person so discharging the acceptor or

maker from afterwards resorting to the other parties to the bill or note. (*Lynch* v. *Reynolds*, 16 J. R., 45; *Brown* v. *Williams*, 4 W. R., 360; *Newcomb* v. *Raynor*, 21 id., 118; *Farmers' Bank of Amsterdam* v. *Blair*, 44 Barb., 641; *Joslyn* v. *Cowee*, 52 N. Y., 90; *Turner* v. *Davis*, 2 Saund., 150, n. 2; Broom's Legal Maxims, *309; *Kowing* v. *Manly*, 49 N. Y., 203.)

ALLEN, J.   Upon the undisputed facts proved upon the trial, and found by the referee, there could have been no recovery by defendants as indorsees of the note of Jaycox & Green, against the present plaintiff, upon his indorsement. His defense would have been perfect upon proof of the facts clearly established in the present action, that he indorsed the note for the accommodation of the makers, for a special purpose, to wit, to enable the latter to take up other notes to which the plaintiff was a party, and that the note with the indorsement was fraudulently diverted from the purpose for which it was made, and delivered to the defendants as collateral security for an antecedent debt, they parting with no value therefor.

When a bill or note is void in its creation, or has been unduly obtained, or has been wrongfully diverted from its purpose, and fraudulently negotiated, the party suing on it is bound to show himself a *bona fide* possessor.   The affirmative is with the plaintiff in an action upon such a note, to prove a clear legal title valid as against the parties to the instrument.   (*Woodhull* v. *Holmes*, 10 J. R., 231.)   One who receives it after due, or with notice of the circumstances under, and purposes for which it was made, although he pays a valuable consideration, is not a *bona fide* holder, entitled to recover thereon.   One who receives it before due, and without notice or knowledge of any fraud in its inception or transfer, but for a precedent debt, and without parting with value or any valuable consideration, does not acquire a valid title to the note or bill, but takes it subject to all its infirmities, precisely as if he had taken it after dishonor, or with

knowledge of all the circumstances affecting its validity. This is the well-established rule in this State, as well as the recognized rule in England. (*Skilding* v. *Warren*, 15 J. R., 270; *Wardell* v. *Howell*, 9 W. R., 170; *Coddington* v. *Bay*, 20 J. R., 637; *Small* v. *Smith*, 1 Den., 583; *Turner* v. *Treadway*, 53 N. Y., 650; *Weaver* v. *Barden*, 49 id., 286; *Covell* v. *Tradesmens' Bank*, 1 Paige, 131; *Goggerly* v. *Cuthbert*, 5 B. & P., 170; *Evans* v. *Kymer*, 1 B. & Ad., 528; Ch. on Bills, 248, 264, 274; *Jones* v. *Fort*, 9 B. & C., 764.) An innocent holder of negotiable paper which he has received in the usual course of trade, for a valuable consideration, though from a person having no title, and no authority to transfer, it will be protected even against the claim of the true owner. (*Stalker* v. *McDonald*, 6 Hill, 93.) And he may acquire a good title and be protected as the holder of paper, although used for a different purpose from that intended, if there is no restriction as to its use, or the particular use is a matter of indifference to the parties. (*Seneca Co. Bank* v. *Neass*, 5 Den., 329; affirmed 3 Comst., 442.) But when a note is made and indorsed to take up another note, to which the indorser is a party, its use is not a matter of indifference to the indorser, and if diverted he may defend himself except as against a *bona fide* holder for value. The defendants taking the note subject to all the infirmities resulting from the fraudulent delivery of it to them acquired no better title to the same as against the plaintiff than Jaycox & Green the makers had. They occupied precisely the position in respect to the accommodation indorser as did the makers. There was no legal liability on the part of the plaintiff to the defendants by reason of his indorsement. The plaintiff was not only under no obligation to the defendants as a party to the note, but at any time before the note came to the possession of a *bona fide* holder for value, he could have reclaimed the note, and in equity prevented its negotiation, and compelled its surrender. (Chitty on Bills, 248; *Jones* v. *Fort*, *supra*.) Could then the defendants put themselves in a better situation, and secure to themselves the full benefit of the plain-

tiff's indorsement, and all the advantages of *bona fide* indorsers for value, by negotiating the note to an innocent transferee for value, before maturity? By such a transfer they could and did subject the plaintiff to all the liabilities of an indorser, and compel the payment of the note by him. But having no title or right to the note, they could have no legal right to transfer the same, and the sale of it by them was a conversion. It is immaterial that they may have acted in good faith and in ignorance of the plaintiff's right. One dealing with the property of others, although under the mistaken belief that it is his property, does so at his peril, and must answer to the true owner for his acts. The defendants have no equities superior to those of the plaintiff, and if the equities are equal the legal title must prevail. It would be illogical, conceding the invalidity of the note in the hands of the defendants, and the non-liability of the plaintiff to them, to hold that the defendants would acquire a title to the proceeds of the note by a transfer of the same to a third person. A party cannot fortify his title to property by a sale, as the title to the proceeds upon sale will be the same as to the property before sale, A wrong-doer cannot, by converting the property into money or some other species of property, cure defects in his title. I am of the opinion that the plaintiff had an election of remedies, trover for the conversion of the note, or an action for money had and received for the amount which the defendants realized upon the sale of the note. This follows from the conceded rule that the defendants were without title to the note, or authority to dispose of the same. No rights whatever to the note, or any right of disposal thereof, were or could be acquired by the unauthorized delivery of the same to the defendants by Jaycox & Green. Jaycox & Green could confer no power over the note inconsistent with the restrictions upon its use imposed by the plaintiff.

The complaint contains the necessary averments to sustain the action in either form, and precedents are not wanting for both forms of action. *Coddington* v. *Bay* (5 J. C. R., 54),

and *Coddington* v. *Bay,* in error (20 J. R., 637), is in principle a controlling authority in support of the plaintiff's claim. It is true in that case the negotiable paper, fraudulently transferred, was made by other parties, and was the property of the complainant, and valid as the obligation of third persons in his hands. The action was by bill in chancery against the defendants, who had received it from the factor of the complainant for an antecedent debt due from him, to recover the notes, or for an accounting for the proceeds. The defendants were held to account for the proceeds. The title to the proceeds was affected by the same infirmities which attached to the paper in their hands. The present plaintiff was as absolutely the owner of the note in this case, and entitled to its surrender to him, as was the plaintiff of the bill or notes in the case cited, and although it may have been of no value in the hands of the defendants, so long as the facts impeaching its validity were susceptible of proof, in the language of Sir JAMES MANSFIELD, Ch. J., in *Goggerly* v. *Cuthbert* (5 B. & P., 170), " it was of importance to the plaintiff to get it back again." The objection that a note or bill which has no legal inception until it has been negotiated upon a valuable consideration has no value as property which will sustain an action of trover, and that an accommodation indorser has no property in paper indorsed by him, is not tenable. It certainly is not logical to say that negotiable paper is of no value, and in no sense property for which trover will lie, for which upon a transfer thereof the transferee can receive, as the defendants here have received, $2,500, and which is of that value to the purchaser, and to get back which the accommodation indorser is compelled to pay the same amount. It is difficult to see why it has not all the elements of property which any negotiable paper has. It can make no difference in principle that the proceeds for which the defendants in *Coddington* v. *Bay* were made to account were payments made by parties to the bills, and in satisfaction of them, rather than the proceeds received upon their negotiations to third persons. In either case the party has received moneys to

which he is not entitled, and which *ex aequo et bono* belong to others. In this case, by the wrongful act of the defendants, of which they have had the fruits, they have imposed a liability upon the plaintiff, and compelled the payment by him of the full amount of the note. The sale of the note by the defendants was a conversion, and the damages sustained by the plaintiff were the amounts he has been compelled to pay. It is no answer to say that the note had no inception until the sale by the defendants. They treated it as property, sold it as such, and had the benefit of it, and the plaintiff has sustained damages to the full amount expressed in it. *McBride* v. *The Farmers' Bank of Salem* (26 N. Y., 450) was an action for moneys received by the defendant upon a note belonging to the plaintiff's assignee, and transmitted through another bank to the defendant for collection, and which the defendant applied to the payment of a balance due from the intermediate bank, which had become insolvent. The defense did not prevail. These cases are decisive of the general principle that the possessor of negotiable paper has no better or other title to the proceeds of such paper than to the paper itself, and that if he has no title to the latter he can be made to account to the true owner for its proceeds or avails. See, also, *Covell* v. *Tradesmens' Bank* (1 Paige, 131), which related to a non-negotiable instrument in which the same principle was applied. The chancellor in giving judgment says : " But according to the decision of this court and the court of errors in *Coddington* v. *Bay*, the bank would not be entitled to retain the proceeds even of a negotiable note thus transferred to them merely as security for an antecedent debt."

The defendants had possession through the fraudulent acts of others of the indorsement of the plaintiff upon a promissory note importing upon its face the ordinary obligation and contingent liability of an indorser of commercial paper, but under circumstances which made the indorsement of no valid or binding force in their hands ; and for the reason that they had no title to the indorsement or property in the note as against

the plaintiff, they could not have resisted an action for its delivery to the plaintiff; and the decisions already referred to stand upon a principle as applicable to this case as to those in which it was applied, for the doctrine is general and applicable to all cases within the reason of the rule, that the proceeds of property held in violation of the rights of the true owner are no more sacred or better protected than the property which the proceeds represent. The holder has the proceeds subject to all the infirmities of title which attached to the specific property or chose in action. It can make no difference in principle whether the note or bill converted is the obligation of the party, and of no value or validity in the hands of the wrong-doer, or the note or bill of a third person. In either case there is a conversion of property, or that which becomes property and of value by the transfer, followed by damages, and these two concurring, an action lies at the suit of the injured party. While many, and indeed most of the precedents of actions in trover for negotiable bills or notes, are for the conversion of the notes or bills of third persons belonging to the plaintiffs, the reports are not barren of cases in which trover has been maintained for the bill or note of the plaintiff, when there has been a conversion by the transfer thereof to a third person for value, so as to give the paper validity in the hands of the transferee. *Buck* v. *Kent* (3 Vt., 99) was an action of trover by the maker against the payee of a note, which ought to have been restored to the maker, and which could not have been enforced by him against the maker. But the payee sold it to a third person, who sued the maker thereon and recovered judgment. The action was sustained and the plaintiff held entitled to recover the amount of the note.

In *Murray* v. *Burling* (10 J. R., 172), the plaintiff had made a note to raise money for his own use, and delivered it to the defendant to procure the money for him ; but the latter turned it out to one of his own creditors, who procured it to be discounted, and the plaintiff was compelled to pay it. It was held that trover would lie, and the plaintiff should

recover what he had to pay to get his note back. *Cranch* v. *White* (1 Bing. [N. C.], 414) is to the same effect. It is laid down in Chitty on Bills (p. 248), that where a bill has been improperly indorsed after due, a party interested in having it delivered up, whether drawer, indorser, or accommodation acceptor, may file a bill in equity or support an action of trover, though, in truth, the bill be of no value. And again, at page 274, when a bill or note is void in its creation, or has been unduly obtained, or is detained contrary to the purpose for which it was delivered, either to an agent or to any person aware of the circumstances, the party entitled to the instrument, even though accommodation acceptor, may maintain an action in detinue or trover to recover the same or its value, or assumpsit for money had and received. The author is supported by the authorities referred to by him, viz. : (*Goggerley* v. *Cuthbert*, 5 B. & P., 170; *Evans* v. *Kymer*, 1 B. & Ad., 528; *Jones* v. *Fort*, 9 B. & C., 764.) One receiving a bill or note without parting with value, as did the defendants here, is in no better situation than one receiving such paper after maturity, or with knowledge of its infirmities. The defendants knew that the plaintiff was an accommodation indorser of the note, and that the note had no validity as a note in their hands. This was evident from the form of the note. They may not have known of the purpose for which it was made, or the restrictions upon its use; but they had no reason to believe that its was made to be delivered to them as collateral security for their debt. I think it very clear, upon principle as well as upon authority, that the plaintiff is entitled to maintain this action, unless barred by the agreement made between him and the assignee in bankruptcy of Jaycox & Green. The result must be the same if the action be regarded as an action for money had and received instead of trover for the conversion of the note. By the transfer of the note the defendants received in money the full amount of the note, less the discount— that is, the full value of it, to which they had no title, and as by such transfer the note became a legal obligation against the plaintiff, who

was compelled to buy the same, the money equitably belonged to him, and for it the defendant should account to him.

But little need be said of the release. The purpose of the agreement is clearly expressed in the instrument, viz., to relieve the estate in bankruptcy of sundry complications and controversies arising out of conflicting claims of creditors claiming to share therein ; and this was accomplished by a release by the assignee to the plaintiff of the premises mortgaged to him as security by the bankrupts, and the agreement of the plaintiff to protect the general estate of the bankrupts against certain notes, including that in question here, so that the same should not be a charge thereon to the prejudice of other creditors. Had he failed to keep his covenant the assignee would have had an action to recover the amount that the general estate might have been diminished by dividends to the holders of the notes. It was simply an agreement to apportion specific funds between the general creditors of the bankrupts and the plaintiff. So far as the plaintiff has been paid from the mortgaged premises, the notes which he agreed to take care of are satisfied ; but the agreement did not affect the notes, or the liability of any of the parties thereto, except as it might lead to a payment thereof from the mortgaged premises released by the assignee. Still less did it affect the claim of the plaintiff against the defendants for a tortious conversion of the note in question. The defendants were not parties to that agreement ; it was not made for their benefit ; did not concern or relate to their liability, or their relations to the plaintiff ; and did not release, extinguish, or qualify the right of action growing out of their sale of the note.

We are constrained to differ with the learned Supreme Court upon the question of evidence upon which the judgment was reversed. There was no exception to the admission of the testimony of the plaintiff of the interview and arrangement with Jaycox & Green, the makers of the note, when both were present. The death of Green did not render the plaintiff incompetent to prove the transaction while Jaycox

was living. If an exception had been taken to the admission
of the evidence it would not have been tenable. If it be
conceded that there was a valid exception to the admission of testimony by the plaintiff, as to transactions with
Green in the absence of Jaycox, and that such evidence
would have been incompetent under section 399 of the Code,
the exception cannot avail to the defendants, for the reason
that there was no material evidence, or evidence which affected
the result, given under objection and over the exception.
The arrangement for indorsing notes, of which that delivered
to the defendants was one, was made in December with Jaycox & Green together, and was proved by competent evidence, and the proof was that this and every note indorsed
subsequent to the arrangement was indorsed pursuant to the
arrangement then made, and subject to the restrictions there
imposed upon the use of the paper. It is not in evidence
whether the particular note was presented for indorsement
by Green, or by a clerk of Jaycox & Green. The mere
indorsement and delivery of the paper to Green, if he presented it for indorsement, was not a transaction between the
plaintiff and Green, which could not be proved by the testimony of the plaintiff. The material facts were the agreement of December, and that the indorsements were made
pursuant to that agreement, and these facts are proved by
uncontroverted evidence aside from the interviews between
plaintiff and Green, referred to in the evidence, all of which
may be stricken out without affecting the result. They did
not fortify, or tend to fortify the plaintiff's case.

But a more decisive answer to the objection and exception
is in the statute (Code, § 399) upon which they are founded.
The defendants are not assignees of Jaycox & Green of the
note in question. Jaycox & Green were parties to the note
as makers, and delivered it as their note to the defendants.
A maker of a note, or acceptor of a bill, negotiating his own
paper, or procuring the same to be discounted, is not an
assignor of the note or bill, but by the transaction assumes
the ordinary obligations of a party to negotiable paper, as

maker of a note or acceptor of a bill. It is an original contract with the party taking the bill or note, and not the assignment of an obligation of a third person. The fact that there are other parties contingently liable as sureties does not affect the character of the transaction. It is nevertheless the obligation of the maker or acceptor of the note or bill, as the case may be, secured by the collateral and concurrent obligation of a third person, growing out of and dependent upon the principal obligation. The obligations of all the parties to the note or bill thus negotiated are concurrent, originating at the same time and through the same transaction, the negotiation of the paper ; which has its inception upon such negotiation by the maker or acceptor. The plaintiff was, therefore, a competent witness to prove transactions with Green, as against the defendants, although Green was dead at the time of the trial.

The order of the Supreme Court must be reversed, and judgment on the report of the referee affirmed.

All concur, except CHURCH, Ch. J., not voting, and EARL, J., dissenting as to the right of plaintiff to maintain the action.

Order reversed and judgment accordingly.