In the Matter of the Application of THE RIVERHEAD, QUOGUE AND SOUTHAMPTON RAILROAD COMPANY for a Certificate under Section 59 of the Railroad Law.

*Railroad — amended certificate of incorporation — not effective to change its route and terminus — proper method of changing its route.*

Section 7 of the General Corporation Law (Chap. 565, Laws of 1890, as amended by chap. 676, Laws of 1892, and by chap. 545, Laws of 1895), authorizing the filing of an amended certificate of incorporation correcting an informality or defect existing in the original or amended or supplemental certificate of incorporation, does not authorize the filing by a railroad corporation of an amended certificate of incorporation, which, while purporting to have been filed "for the purpose of correcting an informality and defect in the original certificate of incorporation of said corporation, consisting of the omission to particularly state, define and describe a portion of the route of said road as well as the terminus in the town of Westhampton," was intended to effect a change in the proposed route and terminus of the railroad; nor can such amended articles of incorporation be deemed a sufficient compliance with section 13 of the Railroad Law, authorizing a railroad company to change its route, where it appears that the certificate of change, together with the survey and map, was not filed in the county clerk's office as required by this section.

APPLICATION by The Riverhead, Quogue and Southampton Railroad Company for the certificate required by section 59 of the Railroad Law, the Board of Railroad Commissioners having refused the application made to it for such certificate.

*Louis Cohen*, for the petitioner.

*William J. Kelly*, opposed.

HATCH, J.:

This application was made by the railroad company for a certificate as required by section 59 of the Railroad Law (Chap. 565 of the Laws of 1890, as amended by chap. 676 of the Laws of 1892, as amended by chap. 545 of the Laws of 1895). The Commissioners denied the application upon two grounds: *First*, "That the application is as to the second articles of association, which the Board does not believe were lawfully amended;" and, *second*, "That the route cannot be changed at this time under the provisions of section thirteen of the Railroad Law." The Board

declined to pass upon the route as stated in the original articles of association, upon the ground that no application was pending or proof given as to any proposed route; and it further declined to pass upon the question as to whether public convenience and necessity required the construction of the railroad between Riverhead and West Hampton, based upon the ground that the applicant was not qualified to receive a certificate for such route. The correctness of this action by the Board of Railroad Commissioners is to be determined by the fact as to whether the proposed railroad company was legally incorporated, and has complied with the law by taking such steps as entitled it to a certificate. The merits of the application are not now before us, and were in nowise considered by the Board of Railroad Commissioners. So far as the facts are concerned, it appears that the original articles of association, which seem to be regular in form, were dated on the 12th day of April, 1897, and were filed in the office of the Secretary of State on the nineteenth day of the same month, and a duplicate original of said articles was filed in the office of the clerk of Suffolk county, that being the county in which it was proposed to build and operate the said railroad.

These articles of association, among other things, provided for the construction of a railroad from points in the town of Riverhead to points in the village of Quogue, all within the county of Suffolk; and in the description of the streets, avenues, highways and private property in and upon which said railroad was proposed to be constructed, it was described as beginning at a point on Osborne avenue in the town of Riverhead and thence along a particular line to Flanders, and " thence southerly along said highway leading from Flanders to Quogue to the depot at Quogue; thence southwesterly along a highway from said depot to and through Quogue and on said highway leading from Quogue to the ocean." Subsequently, at a meeting of the board of directors of the applicant, more than two-thirds of the directors being present, a resolution was duly adopted by such board, changing the proposed route of said railroad so as to have its terminus in the village of West Hampton instead of the village of Quogue; the change in the description of the proposed route being, " thence southerly along the highway leading from Riverhead to West Hampton to the depot at West Hampton; thence

southerly from said depot to the crossroad. at R. W. Robinson's house and thence southerly to the ocean." These amended articles of incorporation were filed in the office of the Secretary of State, and also in the county clerk's office of the county of Suffolk. No other papers were filed in either place under the last-named articles, and the railroad company made its application to the Board of Railroad Commissioners for the certificate required by section 59, solely upon these articles.

The proposed amended articles of incorporation are drawn pursuant to section 7 of the General Corporation Law (Chap. 563 of the Laws of 1890, as amended by chap. 687 of the Laws of 1892), which provides, among other things, that "if in the original or amended certificate of incorporation of any corporation, or if in a supplemental certificate of any corporation, any informality exist, or if any such certificate contain any matter not authorized by law to be stated therein, or if the proof or acknowledgment thereof shall be defective, the corporators or directors of the corporation may make and file an amended certificate correcting such informality or defect or striking out such unauthorized matter." The amended articles of incorporation recite, "for the purpose of correcting an informality and defect in the original certificate of incorporation of said corporation, consisting of the omission to particularly state, define and describe a portion of the route of said road as well as the terminus in the town of Westhampton, do hereby make and file this amended certificate, pursuant to the General Corporation Law of the State of New York, section 7, and for such purpose do certify and declare as follows:" It is quite evident from an examination of the proposed route of this railroad that there existed no defect, informality or mistake therein. The description of the route of the road was over a certain specified line and roads beginning in the town of Riverhead and ending in the village of Quogue. The amended articles accomplished, what was evidently intended, a change of the proposed route from Hallett's mill, a place upon the line, to the village of West Hampton. It is, therefore, plain that the section under which the railroad company sought to change its articles by changing a part of its route, does not confer authority so to do. The purpose and object of this section are plain, as its language indicates, namely, to correct mistakes, informalities and

defects which may exist in the articles of incorporation. It has no application to an amendment of articles which seek to change the route of the railroad.

We are confirmed in this view by the provisions of section 13 of the General Railroad Law (Laws of 1890, chap. 565, as amended by Laws of 1897, chap. 235), which in terms provide for a change of route, grade or terminus, by authorizing any railroad corpora- tion, except elevated railways, by a vote of two-thirds of all its directors, to alter or change the route or any part of the route of its road or its termini, or locate such route or any part thereof or its termini in a county adjoining any county named in its certificate of incorporation, if it shall appear that the line can be improved thereby, upon making and filing in the clerk's office of the proper county a survey, map and certificate of such alteration or change. This corporation, while having ample powers to act under this provision, has not assumed so to do, but has assumed to act under a provision of law having no application to its case. It might be possible to hold the amended articles of incorporation a sufficient compliance with section 13 of the General Railroad Law, if what was done were a substantial compliance with its terms, even though it was assumed to be taken under the General Corporation Law, but the difficulty is that in order to change its route, under the provisions of section 13, it is required to file in the clerk's office of the county the certificate of change, together with a survey and map. This last requirement is wholly lacking, as the only paper filed in the clerk's office of Suffolk county was the amended articles of incorporation as hereinabove specified. This might be construed as constituting a certificate of a change of route, but it cannot be held to answer for a survey and map which the statute requires. The filing of a survey and map is as essential a part of the proceed- ings as are the articles of incorporation. (*Matter of Citizens' Waterworks Co.*, 32 App. Div. 54.) This failure upon the part of the railroad company to comply with the law makes the steps taken of no force and effect. Such acts constitute conditions precedent, and must be complied with. (*Farnham* v. *Benedict*, 107 N. Y. 159.) This applies to an application for a certificate to the Board of Railroad Commissioners. (*Matter of Kings, Q. & S. R. R. Co.*, 6 App. Div. 241.)

In *Matter of N. Y., L. & W. R. Co.* (88 N. Y. 279), relied upon by the appellant, this requirement is recognized.    The language of the court in that case was, " The only prerequisite to the exercise of the authority to change the route was a vote of two-thirds of the directors, sanctioning the new location, *followed by the filing of the survey, etc.*"   So far as the name of the proposed railroad is concerned, we think no valid objection can be raised, nor do we think that it is within the province of the Board of Railroad Commissioners to inquire into this matter, at least so far as to make it the basis of the denial of a certificate in a proper case.    It is quite likely that upon the merits the railroad company can make a case for the issuance of a certificate, but it cannot complain of the refusal of the Board until it has complied with the law.

It follows that the application should be denied.

All concurred, except BARTLETT, J., taking no part.

Application denied, with ten dollars costs and disbursements.